Kevin FOLEY and Paul Brown,
Plaintiffs-Appellants,

v.

Robert HAMILTON, Harry Roberts, Sevier County, Tennessee, and the Gatlinburg Regional Planning Commission,
Defendants-Appellees.

Supreme Court of Tennessee.

Oct. 24, 1983.

David B. Maxwell, Steven E. Marshall, Sevierville, for plaintiffs-appellants.

Gary R. Wade, Ogle, Wade & Wynn, Ronald E. Sharp, Hailey, Waters, Sykes & Sharp, Sevierville, for defendants-appellees.

OPINION

FONES, Chief Justice.

This case involves provisions of Tennessee's regional planning law, T.C.A. § 13–3–101, et seq.

## I.

Plaintiffs, homeowners in Huskey Groves Estates Subdivision located in Sevier County, Tennessee, brought suit against (1) the subdivision developers, Robert Hamilton and Harry Roberts, (2) the Gatlinburg Regional Planning Commission, an agency of the City of Gatlinburg, and (3) Sevier County, for a determination of liability for the maintenance of certain roads within the subdivision and for damages.

The facts adduced at trial reveal that the subdivision in question was developed in 1973 by Hamilton and Roberts, d/b/a Hamilton-Roberts Development Co., and although not located within the corporate limits of the City of Gatlinburg, said subdivision was within five miles of the city and thus within the territorial jurisdiction of the Gatlinburg Regional Planning Commission pursuant to T.C.A. § 13–3–102. Therefore, pursuant to the Commission's authority under T.C.A. § 13–3–403, the subdivision had to conform with the Commission's subdivision regulations, enacted January 1973, and a plat of the subdivision had to be approved by the Commission before said plat could be recorded and lots therein offered for sale by the developers.

On May 17, 1973, a plat of the subdivision was presented by the developers to the Commission for its approval, and on October 19, 1973, the Commission formally approved the subdivision plat for recording in the office of the Sevier County Register, as evidenced by the Commission secretary's signature and certification on the plat. In exchange for this final approval, at the request of the Commission, the developers executed a "Commitment for Road Maintenance," signed by Hamilton and one Clarence Walker, the Assistant City Manager of the City of Gatlinburg and a member of the Commission. It stated, in pertinent part, as follows:

"WHEREAS acceptance and approval by the Gatlinburg Regional Planning Commission tentatively is offered upon the condition that said Hamilton-Roberts Development Company will maintain said roads during an initial public use period;

NOW THEREFORE, said Hamilton-Roberts Company does hereby commit and undertake to maintain and keep repaired the roadways in said Huskey Grove Subdivision in adequate condition for the regular use for ordinary traffic during the period of eighteen (18) months minimum from the date hereof."

On October 24, 1973, Walker issued a letter to Hamilton explaining the reasons why final approval of the subdivision was given on the condition that the eighteen month road maintenance agreement be executed. It stated, in pertinent part, as follows:

"Article IV, Section 2, Paragraph C of the Subdivision Regulations, Gatlinburg Tennessee Planning Region concerning road improvements states:

A compacted base course six (6) inches deep and three (3) feet wider than the width of pavement on each side of the street shall be installed on all streets, including cul-de-sacs, temporary turn-arounds and access streets to adjoining properties.

This base course shall consist entirely of pugmill stone, or it may consist of approximately eighty (80) percent of crushed stone and twenty (20) percent manufactured sand, water bound constructed.

All base course material shall be deposited and spread by means of spreader boxes, or approved mechanical equipment, or from moving vehicles equipped to distribute the material in a uniform layer compacted by an eight (8)—to ten (10)—ton roller with the addition of water to properly bind the material. Each layer shall be not more than three (3) inches in thickness after compaction.

Examination of the roads in Huskey Groves Estates by the City Engineer, David Franklin, and State Planner John Mayes revealed that the base or subgrade had not been adequately compacted in several areas. It was their opinion that further settling of the subgrade would endanger the road surface.

It was the opinion of the Gatlinburg Regional Planning Commission that in the event of failure of the road surface, repairs should be the responsibility of the developer rather than the county taxpayers as a whole. However, since Hamilton had attempted to comply with regulations in all respects and since it was recognized that the steep grade on certain road sections prohibited the use of an 8–10 ton roller as specified in the regulations, execution of a maintenance agreement would be satisfactory in lieu of posting a cash bond."

Robert Hamilton testified that he and Roberts maintained the roads for the eighteen months between October 19, 1973, and April 19, 1975, and that this consisted mainly of employing third parties to clear the ditches and lightly gravel the road surfaces. This testimony was corroborated by a City of Gatlinburg employee, Melvin Hill, who inspected the roads at the end of the eighteen month period and was "satisfied" that the developers had fully performed the "Commitment," given the fact that the Gatlinburg Regional Planning Commission had waived the base course compacting regulations and the regulation requiring the use of an eight to ten ton roller on the roads.

Following the expiration of the eighteen month period, the developers made no further efforts to maintain the roads. It was their belief that the Commission had finally accepted the subdivision plat and that the "Commitment" contained no provisions requiring them to continue maintenance after April 19, 1975. Moreover, neither did they attempt to comply at this time with the procedures and requirements contained in a "Resolution" of the Sevier County Quarterly Court, dated January, 1963, which states in part as follows:

"NOW BE IT RESOLVED THAT THE QUARTERLY COUNTY COURT ADOPT THIS RESOLUTION REQUIRING THE FOLLOWING BEFORE THE SEVIER COUNTY HIGHWAY DEPARTMENT CAN ACCEPT ROADS AND STREETS IN SAID SUBDIVISION FOR MAINTENANCE.

(1) A RIGHTS OF WAY DEED BE PRESENTED TO THE COUNTY IN LEE OF NOT LESS THAN 50 FEET IN WIDTH ALONG WITH ALL NECESSARY DRAINAGE EASEMENTS.
(2) A MINIMUM ROCK BASE OF NOT LESS THAN 4 INCHES THICK AND NOT LESS THAN 24 FEET WIDE.
(3) ROADS AND STREETS MUST BE PROPERLY GRADED, BANKS SLOPED AND ADEQUATE DITCHES.
(4) ALL SIDE AND CROSS DRAINS MUST BE INSTALLED AND MUST BE ADEQUATE FOR PROPER DRAINAGE AS THE SITUATION MAY REQUIRE IN LENGTH AND DIAMETER.
(5) THE COUNTY ROAD SUPERINTENDENT AND COUNTY JUDGE MUST INSPECT AND ACCEPT SAID ROADS AND STREETS BEFORE THEY BECOME COUNTY ROADS."

The record shows that the developers knew that the standard practice of Sevier County was to accept subdivision roads as county roads, once subdivision plats referring to these roads had been finally approved by the Gatlinburg Regional Planning Commission. Yet it wasn't until September 30, 1978, that any attempt was made on behalf of the developers to comply with the "Resolution" and obtain Sevier County acceptance of the subdivision road. At that time, the developers prepared, executed, and recorded a Deed of Easement to Sevier County, granting the County easements and rights of way for all public roads in the subdivision; however, this Deed of Easement was never delivered to or formally accepted by Sevier County officials.

The roads in the Huskey Groves Estates Subdivision fell into disrepair shortly after the developers ceased their maintenance on April 19, 1975. At the time suit was filed on February 22, 1979, the roads had almost totally eroded and in some places were all but impassable. The record does reveal, however, that on various occasions from 1976 to 1980, some temporary work was done on the roads by employees of the Sevier County Road Department at the request of various owners of the property in

the subdivision. It was denied, however, that this road work was done with the knowledge and direction of the Sevier County Road Department officials, and there were concurrent findings of fact by the chancellor and Court of Appeals to this effect.

Plaintiffs purchased their property in 1978, despite the deteriorated condition of the roads, and after repeated efforts to get the roads repaired proved futile, their suit was filed.[1] The chancellor dismissed the suit after a full hearing on the merits, holding that none of the defendants could be liable for the condition of the roads in the subdivision and leaving the responsibility for the maintenance of the roads with plaintiffs, "at least until such time as Sevier County can be persuaded to accept such responsibility." The Court of Appeals affirmed. We granted plaintiffs' T.R.A.P. 11 appeal as to defendants Hamilton and Roberts, and the Gatlinburg Regional Planning Commission only.

## II.

In analyzing and interpreting the Regional Planning statutes, T.C.A. § 13–3–101 *et seq.*, it is the duty of this Court to ascertain and give effect to the Legislature's reasonable intent. *Marion Cty. Bd. v. Marion Cty. Election Com'n.*, 594 S.W.2d 681 (Tenn. 1980); *City of Lenoir City v. State, etc.*, 571 S.W.2d 297 (Tenn.1978). Legislative intent and purpose are to be determined primarily from the "natural and ordinary meaning of the language used, when read in the context of the entire act or statute, without any forced or subtle construction to limit or expend the import of that language." *Oliver v. King*, 612 S.W.2d 152, 153 (Tenn. 1981).

T.C.A. § 13–3–302 sets out the general purpose of regional development plans. The aim is to

... best promote the health, safety, morals, order, convenience, prosperity and welfare of the inhabitants, as well as efficiency and economy in the process of development, ...

T.C.A. § 13–3–402 provides that

[n]o plat of a subdivision of land within such region, other than land located within the boundaries of any municipal corporation, shall be filed for record or recorded until it shall have been approved by such regional planning commission and such approval be endorsed in writing on the plat by the secretary of the commission, ...

T.C.A. § 13–3–403 authorizes a regional planning commission to regulate subdivision development within its jurisdiction and that

Such regulations may include requirements as to the extent to which and the manner in which roads shall be graded and improved and water, sewer and other utility mains, piping, connections or other facilities shall be installed as a condition precedent to the approval of the plat. The regulations or practice of the commission may provide for the tentative approval of the plat previous to such improvements and installation, but any such tentative approval shall not be entered on the plat.

The regulations may also provide that in lieu of the completion of such work, prior to final approval of a subdivision plat, the commission may accept a bond providing for, and securing to, the public the actual construction and installation of such improvements.

T.C.A. § 13–3–405 sets out an important exception in that plat approval is *not* acceptance of the roads contained therein. Specifically

The approval of a plat by the regional planning commission shall not be deemed to constitute or effect an acceptance by any county or by the public of the dedica-

---

1. The chancellor originally dismissed plaintiffs' suit on defendants' motions for summary judgment. The Court of Appeals reversed, ordering a full trial on the merits, and held that plaintiffs had standing to bring such suit pursuant to the Tennessee Declaratory Judgment Act, T.C.A. § 29–14–101, *et seq.* This Court subsequently denied defendants' application for permission to appeal. *See Foley v. Hamilton*, 603 S.W.2d 151 (Tenn.App.1980).

tion of any road or other ground shown upon the plat.

T.C.A. § 13–3–406 provides that when the platting jurisdiction of a planning commission of any region shall have attached, no county, court, board or officer thereof, or any other public officer or authority shall accept, lay out, open, improve, grade, pave or light any road unless such road shall have been accepted or opened, or shall have otherwise received the legal status of a public road.

Sections 13–3–410 and 13–3–411 were added to this Chapter in 1951, sixteen years after adoption of the original regional planning act.

T.C.A. § 13–3–410 sets out the penalties for transferring lots in unrecorded subdivisions. It is a misdemeanor for a developer to sell lots prior to plat approval. However, lots may be sold when bond is posted providing for the actual construction and installation of necessary improvements.

T.C.A. § 13–3–411 states that no building permit or certificate of compliance shall be issued for, or no building or structure shall be erected on any lot within the jurisdiction of any regional planning commission, unless the street giving access to the lot has been accepted or opened as, or otherwise received the legal status of a public street.

The common thread running through this legislative scheme is protection of the public, guaranteeing that adequate streets will be provided when property is subdivided. The safeguard function of these statutes is further depicted by the amendment adding the penalty and prohibitory sections years after the original act was adopted, giving specific enforcement power to remedy violations. In addition, the exception carved out of the act providing that plat approval is not acceptance of roads therein clearly shows the legislative intent of requiring specific and separate acceptance of roads, over and above the steps required to get plat approval.

■ We are of the opinion that these statutes impose a duty upon developers of recorded subdivisions in regional planning zones to obtain acceptance of the roads by a county highway department. That duty, together with the reasonable expectation of purchasers of property in a recorded regional subdivision, absent any statutory scheme, that the roads therein will be public roads maintained by the county, create an implied contractual obligation on the part of the developer to take all steps necessary to obtain county acceptance of the roads within such a subdivision.

■ The duty of a county to repair roads does not arise until roads are accepted. The record in this case evidences that Sevier County has never expressly accepted the roads in the Huskey Groves Estates and there is a concurrent finding of fact that there was no implied acceptance.

■ The developers had an implied contractual obligation to plaintiffs and all other owners of lots in the subdivision to do whatever was necessary to obtain an acceptance of the roads by Sevier County at the end of the eighteen month maintenance period on April 19, 1975. In this case, when the "Commitment" to maintain expired, the developer assumed that his responsibility to maintain the roads expired. That assumption was incorrect. A developer's responsibility to maintain roads is a continuing responsibility until such time as the county accepts their dedication.

Approximately three years after the expiration of the "Commitment," the developers attempted to get county acceptance of the roads. They executed a Deed of Easement on September 20, 1978, purporting to transfer easement and rights-of-way to Sevier County of all public roads within the subdivision in compliance with the county "Resolution." However, as a result of the three year delay, the roads had fallen into such a state of disrepair that the county refused to accept them.

■ The role of the Gatlinburg Regional Planning Commission in creating this deplorable situation is far from blameless. However, under the circumstances of this case, the provisions of the Tennessee Governmental Tort Liability Act, T.C.A. § 29–

20–101, *et seq.,* require us to hold that the Gatlinburg Regional Planning Commission, a "governmental entity" as defined by T.C.A. § 29–20–102, is immune as a matter of law from any joint liability for the condition of the roads. The Commission's decision to waive its own grading and compacting regulations and to grant final approval of the developers' plat on October 19, 1973, does not constitute one of the exceptions provided by the Legislature which would remove the statutory grant of immunity from liability enjoyed by the Commission under the act. *See* T.C.A. § 29–20–205.

The record before us is inadequate for this Court to determine the appropriate relief to be granted. Plaintiffs, in their own behalf and on behalf of all present and prospective lot owners in the Huskey Groves Estates subdivision should be entitled to a decree of the chancery court ordering and directing the developers to make such repairs and take all procedural steps necessary to obtain acceptance of the roads in the subdivision by Sevier County. However, there may be equities in this particular case that would make that relief too harsh for a court of equity to invoke. If the developers still own any of the lots in the subdivision, the chancellor may enjoin the sale of any lots until the roads are accepted by the county. There is also available, as the minimum remedy to be imposed in this case an award of damages to the two plaintiff lot owners, for the diminution in value of their respective properties caused by the failure of developers to obtain acceptance of the roads by Sevier County.

This cause is remanded to the Chancery Court of Sevier County for an evidentiary hearing and determination of the appropriate relief to be granted and the entry and enforcement of its decree.

Costs are adjudged against developer.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.