Jimmy Joe HACKETT, and wife, Judy
LaDell Hackett, residents of Smith
County, Tennessee, Plaintiffs–Appel-
lees,

v.

SMITH COUNTY, Tennessee,
Defendant–Appellant.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Feb. 28, 1990.

Application for Permission to Appeal
Denied by Supreme Court
July 23, 1990.

James B. Dance, Carthage, for plaintiffs-
appellees.

Jacky O. Bellar, Carthage, for defendant-
appellant.

CRAWFORD, Judge.

This case involves a dedication of roads in the Tanglewood Acres Subdivision in Smith County, Tennessee. Plaintiffs, Jimmy Joe Hackett, and wife, Judith LaDell Hackett, the developers of the subdivision, sued Smith County, Tennessee, seeking primarily a declaration that the streets in the subdivision are public roads.

The complaint alleges that plaintiffs had subdivision plats prepared for Tanglewood Acres Subdivision, Section 1 commercial and Section 2 residential, and they as the owners of the property adopted the plan of subdivision and dedicated all the streets shown on the plats to the public use. The complaint avers that the plats contain certification that the sewage disposal and utility systems met the requirements of the Tennessee Health Department, a certification by the surveyor that the plats were accurate and a certification by the secretary of the planning commission that the plaintiffs had complied with all the subdivision regulations of Smith County. The complaint further avers that the county road commissioner certified on the plats that the streets, utilities and other improvements were installed in an acceptable manner according to county specifications and that a bond had been posted to insure the completion of all required improvements. After having been approved by the planning commission, the plats were duly recorded in the Register's Office of Smith County.

The complaint further alleges that 27 of the residential lots have been sold and the owners have built houses thereon and, although the Smith County Commission never formally accepted dedication of the roads shown on the plat, the roadways have become public roadways by virtue of use thereof by the public since the subdivision was developed.

Smith County's answer admits that the subdivision plats were duly recorded and had the certifications thereon as alleged and admits that the county never accepted the roadways as public roads. The answer further avers that there was no acceptance of the dedication by implication by virtue of any use thereof by the public.

At trial, plaintiffs asserted that the recorded plat signifies an offer to dedicate the roads in the subdivision to public use and that the continued public use thereof is an implied acceptance of that offer thereby consummating the dedication. The defendant, Smith County, asserted that the onus is upon the developer to seek explicit acceptance of the road dedication from the Smith County Quarterly Court, the legislative body of Smith County. In addition to asserting that explicit acceptance is required, the county argued that the roads never met the appropriate specifications, that the county is immune from this suit, and that this suit was improperly brought as it should have been brought as a mandamus action.

The trial court held that the county was not immune from suit, the suit was properly brought, and there was an acceptance by implication of the offer of dedication of these roads.

Jimmy Joe Hackett testified that he and his wife bought the property in question, 99.9 acres, in December of 1977 from Albert Gore, Sr. After having the property surveyed and a subdivision plat prepared, he took the plat before the Planning Commission for Smith County. He made a security bond of $196,250.00 for completion of the roads and Willie B. Bane, the County Road Commissioner at that time, certified the plat on July 14, 1978. The planning commission approved the plat on July 17, 1978 and on July 18, 1978, the plat was recorded with the Smith County Register's Office. Hackett subsequently hired Mofield Brothers and Redman Construction Company to build the roads. Once the roads were completed, the County Road Commissioner approved the roads as being properly constructed and the bond was released on May 18, 1981. Hackett was never told by the planning commission, nor by any county official, that he should do anything further concerning the roads. Hackett further testified that when he learned that the county was disclaiming responsibility for the roads, efforts were made for County Court acceptance of the dedication.

Hackett's testimony also reveals facts pertinent to the question of public use of the roads. At the time of trial, there were 12 inhabited houses in the subdivision and one house under construction. One of the residents, Charles Bass, runs a lawn mower repair business out of his home to which the public travels, using the roads in question. The public at large also looks at the homes for sale in the subdivision and goes fishing in a pond and in a river to which they gain access by the use of these roads. Hackett also testified that school buses run on these roads and that mail is delivered to the homes in the subdivision. The homes all have city water. The sheriff's department patrols the subdivision and the fire department services it.

Sammie B. Torrence, the Chairman of the Smith County Planning Commission, testified to the course of the dealings between the planning commission and Jimmy Joe Hackett. On June 19, 1978, Hackett presented his plat of the subdivision for preliminary approval. On June 21, 1978, the plat was given preliminary approval. On July 17, 1978, Hackett presented his plat for a final approval. Final approval was given subject to a bond in lieu of the improvements including the roads in question. On July 21, 1980, the commission voted to contact Hackett and advise him of the need to complete certain improvements in the subdivision. Again, on November 17, 1980, the commission voted that Hackett be advised that the roads in the subdivision needed to be paved as soon as possible. On December 15, 1980, Torrence reported back to the commission that Hackett had plans to complete the work in the spring of 1981. On May 18, 1981, the commission voted to declare their work on the Tanglewood Acres Subdivision finalized, having received a report from Willie B. Bane, County Road Commissioner, stating that the roads in the subdivision met the appropriate standards and had been approved by him. Hackett's bond was released on May 18, 1981 and after this date the commission required no further action of Hackett. According to Torrence, the commission has never advised anyone to go before the County Court to seek approval or acceptance of roads and he opined that this was not required. Torrence also testified that the Tanglewood Acres Subdivision was treated no differently than any other subdivision.

The County Clerk, Joe Scruggs, testified as to the actions of the Smith County Quarterly Court, with respect to the Tanglewood Acres Subdivision as reflected in the minutes of the County Court. Sammie Torrence was invited to speak to the County Court on November 10, 1986. He stated that the Smith County Planning Commission had approved the subdivision and that the County Road Commissioner, Willie B. Bane, had approved the roads. However, he stated that approval by the Planning Commission and by the County Road Commissioner does not constitute acceptance of the roads by the county and that these roads must be presented to the County Court for acceptance. The motion which was made to accept the roads as county roads failed by a vote of 21 to 3. On January 12, 1987, a report of the Planning Commission was presented to the County Court, seeking to have a method designed whereby roads approved by the Planning Commission could be brought before the County Court for acceptance. The County Court voted to make the road committee responsible for recommending roads for approval and/or acceptance as county roads. The Tanglewood Acres Subdivision was presented for approval. The discussion on this motion concerned the condition of the roads and the steps necessary to cause the roads to meet the appropriate specifications before acceptance. Former Road Commissioner Willie B. Bane informed the County Court that the roads in the subdivision had met the Planning Commission specifications when they were built and that Hackett thought the roads were under the county's jurisdiction upon completion. The motion for acceptance failed by a vote of 13 to 12. From the discussion reflected in the minutes of the County Court, it appears that the commissioners themselves were unaware of the appropriate method for seeking an acceptance of an offer of dedication of roads such as these.

Various witnesses presented testimony as to the nature of the use of the roads in the Tanglewood Acres Subdivision. The Postmaster at Carthage testified that mail is delivered to each of the homes in the subdivision. This delivery commenced after Hackett's assurance that he would maintain the roads until acceptance by the county. The transportation supervisor for the Board of Education of Smith County testified that school buses run to the homes in the subdivision. Although he does not know if the roads are public and he has not checked the map, county school buses try to stay off private roads. The County Clerk for Smith County brought the business tax records of Tanglewood Repair which indicate that Charles Bass, a resident of the subdivision, operates a business in his home. The Chief Deputy for the Smith County Sheriff's Department, who is a resident of the subdivision, testified that the whole subdivision is patrolled by the Sheriff's Department. He also testified that his daughter catches the school bus at their home. The tax assessor in Smith County testified that, while taxes are assessed on the lots in the subdivision, the county stopped taxing the land used as roads in 1978.

The record also shows that roads in other subdivisions are maintained by the county without explicit acceptance of offers of dedication. Barbara Roark, a deputy clerk in the County Court Clerk's Office, testified that she reviewed the minutes of the County Court in the clerk's office from 1975 through 1983, but did not find any instance of the county expressly accepting any roads. Clyde Shores, the County Road Commissioner since 1984, testified that, although the roads in Tanglewood Acres Subdivision have never been maintained by the county, he has maintained roads in several other subdivisions. He relied on the statement of the county commissioner from that area that a street coming off of Locke Seven Road was a county road, but did not check the county commission minutes before doing road work there. The developer who built Locke Seven County Estates at least eight years prior to the trial testified that he never went before the

County Court for acceptance of the roads in the subdivision and that the Smith County Road Department has done maintenance work on those roads.

The first issue is whether the trial court erred in holding that the action as filed was not a mandamus action. Smith County asserts that this action was filed to force Smith County to take over and accept the roads in Tanglewood Subdivision and that pursuant to *Whitesides v. Stuart*, 91 Tenn. 710, 713, 20 S.W. 245 (1892), the suit was improperly brought since the State is not a party.

■■■ For an act to be enforced by a writ of mandamus, the act must be purely "ministerial." *Peerless Construction Co. v. Bass*, 158 Tenn. 518, 520, 14 S.W.2d 732 (1929). If the right to have the act performed is doubtful, the right must be first established in some other form of action. Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established. *Peerless*, 14 S.W.2d at 733. The writ of mandamus will not lie to control official judgment or discretion, but it is the proper remedy where the proven facts show a clear and specific legal right to be enforced, or a duty which ought to be and can be performed. *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221 (Tenn.1988), citing *State ex rel. Ragsdale v. Sandefur*, 215 Tenn. 690, 696, 389 S.W.2d 266, 269 (1965).

■■ Mandamus is not the proper remedy in this case because there is no clear and specific legal right sought to be enforced. Contrary to appellant's assertions, Hackett did not seek to have the trial court order Smith County to maintain the roads in Tanglewood Acres Subdivision. He sought a declaration that the roads in the subdivision have become county roads. This issue is without merit.

■■ The second issue is whether the trial court erred in not holding that the county was immune from suit under the doctrine of governmental immunity. Appellant asserts that the Tennessee Governmental Tort Liability Act, T.C.A. § 29–20–101 et seq., as applied in *Foley v.*

*Hamilton,* 659 S.W.2d 356 (Tenn.1983) governs this case.

The Tennessee Governmental Tort Liability Act was held to apply in that case only because the plaintiff sought to enforce liability on the Planning Commission. The Planning Commission was immune from liability only to the extent that they had engaged in tortious activity. *Foley,* 659 S.W.2d at 360–361. In this case, there are no allegations of tortious activity and liability was not sought to be determined.

This issue is controlled by the earlier case of *Foley v. Hamilton,* 603 S.W.2d 151 (Tenn.App.1980). In *Foley,* plaintiffs, homeowners in a subdivision, brought suit against, among others, the developer of the subdivision and Sevier County, seeking, *inter alia,* a determination of responsibility for maintenance of the roads in the subdivision. The trial court dismissed the suit on motions for summary judgment. The Eastern Section of this Court reversed the trial court and remanded the case for trial on the merits holding that the plaintiffs had standing to bring the suit pursuant to the declaratory judgment act, T.C.A. § 29–14–101 et seq. Likewise, the plaintiff in this action has standing to seek a declaration that the roads in question are public roads. Appellants' second issue is without merit.

The third and fourth issues are whether the trial court erred in holding that acceptance of an offer of dedication can be by implication and whether the trial court erred in holding that the roads had become public roads without the express acceptance of the roads by the county legislative body. The appellant asserts that it is the task of the county commissioners to decide whether or not to accept roads. Appellant cites T.C.A. § 13–3–405 which states that approval of a plat by a regional planning commission does not constitute acceptance of the roads on the plat by the county.

 A completed dedication requires an offer of dedication and a public acceptance of that dedication. *Smith v. Black,* 547 S.W.2d 947, 950–51 (Tenn.App.1976). Both the offer of dedication and the public acceptance may be express or implied.

*McCord v. Hayes,* 202 Tenn. 46, 302 S.W.2d 331 (1957); and *State ex rel Matthews v. Metropolitan Gov't,* 679 S.W.2d 946 (Tenn. 1984). On the question of implied acceptance, the Court in *Doyle v. City of Chattanooga,* 128 Tenn. 433, 161 S.W. 997 (Tenn. 1913) said:

> It may now be considered as the prevailing opinion that an acceptance may be implied from a general and long continued use by the public as of right. The latter decisions upon the subject will, when analyzed, be found to be well embedded in principle.... The municipal corporation consists of the inhabitants and not the officers: the officers are, in true, nothing more than the agents of the corporation. The inhabitants, therefore, stand to the officers as principles, and if the principles have, by their conducts, accepted the dedication, it is of no great importance that the agents have taken no action in the matter. The inhabitants of a locality having, by long-continued use, treated the way as a public one, they make it such without the intervention of those who derive their authority from them. (citations omitted).

128 Tenn. at 438–39, 161 S.W. 997. The failure of public officials to expressly accept a dedication will not defeat that dedication if there has been use by the general public. *See Cartwright v. Bell,* 57 Tenn. App. 352, 368–369, 418 S.W.2d 463, 470–471 (Tenn.App.1967); and *Nashville & D.R.R. v. State,* 60 Tenn. 55 (Tenn.1873).

 Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). From our review of the record we cannot find that the evidence preponderates against the trial court's finding that there had been sufficient use by the general public to constitute acceptance of the roads in Tanglewood Acres Subdivision.

Accordingly, the order of the trial court is affirmed and the case is remanded for such further proceedings as may be neces-

sary. Costs of the appeal are assessed against the appellant.

HIGHERS and FARMER, JJ., concur.