IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| WINDON H. TAYLOR and SARAH A. TAYLOR, | ) C/A NO. 01A01-9609-CV-00411 |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) SUMNER COUNTY CIRCUIT COURT |
| | ) No. 13574-C |
| | ) |
| T&N OFFICE EQUIPMENT, INC., | ) |
| JERALD W. NICHOLS and | ) |
| GAYLE J. NICHOLS, | ) |
| | ) HONORABLE THOMAS GOODALL, |
| Defendants-Appellants. | ) JUDGE |

For Appellants

LARRY L. CRAIN
Brentwood, Tennessee

For Appellees

LOUIS W. OLIVER, III
Hendersonville, Tennessee



**FILED**

**May 23, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

O P I N I O N

AFFIRMED IN PART
VACATED IN PART
REMANDED

Susano, J.

Windon H. Taylor and his wife, Sarah A. Taylor (collectively "the Taylors"), sued T&N Office Equipment, Inc. (T&N) and Jerald W. Nichols and his wife, Gayle J. Nichols (collectively "the Nichols"), alleging that the defendants had defaulted on a promissory note. The trial court found that a default had occurred. It then held that the Nichols[1] were obligated under the note to pay $11,960.13 in attorney's fees. The Nichols appealed, raising the following questions for our review:

> 1. Did the trial court err in finding that the Nichols had defaulted on the promissory note?
>
> 2. Did the trial court err in awarding as reasonable attorney's fees the amount of $11,960.13, being one-sixth of the principal recovered on the promissory note?

## I. *Facts*

Between 1978 and 1991, Mr. Taylor and Mr. Nichols each owned fifty percent of the stock of T&N. In January, 1991, T&N purchased Mr. Taylor's interest in the corporation, leaving Mr. Nichols as its sole owner. At that time, T&N, acting through Mr. Nichols, executed a promissory note obligating T&N to pay the Nichols $135,000, with interest, in monthly installments of $2,087.36. At the bottom of the note, the Nichols "unconditionally" guaranteed payment of the note. The Nichols also signed a hypothecation agreement pledging two $50,000

---

[1] While it is not entirely clear in the record, the judgment does not appear to be against T&N Office Equipment, Inc. This may be explained by Mr. Nichols' testimony that "[i]n January, 1995, T&N filed for Chapter 7 bankruptcy." The complaint in this case was filed on October 28, 1994.

certificates of deposit as collateral for the debt.  The parties
also executed a security agreement that granted the Taylors a
security interest in, among other things, T&N's accounts
receivable.

The promissory note defines "default" as occurring
under various circumstances, including each of the following:

> [T&N] becoming insolvent or generally failing
> to pay its debts as they become due;

> \*     \*     \*     \*

> *Failure of [T&N]* to abide by the terms of the
> security agreement which partially secures
> this note or *to provide the collateral as
> provided herein;*...

(Emphasis added).  The note also provides that

> [a]s the unpaid balance on this note shall
> decline, [T&N] shall not be required to
> maintain cash collateral in excess of the
> unpaid balance due hereon.  When the unpaid
> balance due hereunder shall be One Hundred
> Thousand ($100,000.00) Dollars or less, the
> Security Agreement shall be released.

> In the event this note is placed in the hands
> of an attorney for collection or for
> protection of any interest [the Taylors]
> might have in collateral securing payment of
> this note, [T&N] and all sureties,
> guarantors, endorsers and other parties
> hereto agree to pay reasonable attorneys'
> fees and court and other costs incident to
> such efforts.

In 1993, without the plaintiffs' knowledge, Mr. Nichols
cashed one of the certificates and left town after falsely
representing to the issuing bank that the certificate had been

3

lost or destroyed. Upon Mr. Nichols' return, the Taylors met with the Nichols, who agreed to deposit approximately $45,000 into a joint account with the Taylors as collateral for the note in place of the certificate of deposit. One thousand dollars was to be transferred from that account each month into Mr. Taylor's account, as a part of the monthly payment due under the note. The parties had a mutual understanding that all four of their signatures would be required before any funds could be withdrawn from the joint account; however, the bank's policy required only one signature to authorize a withdrawal, and the account was apparently set up with this proviso.

In October, 1994, Mr. Taylor learned that one of T&N's creditors, Panasonic, was attempting to recover a debt of $5,295.36 by enforcing a personal guaranty signed by Taylor in 1985. The Panasonic obligation had been incurred by T&N after Mr. Taylor sold his interest in the business.

Mr. Taylor also discovered that Mr. Nichols had again left the area. He was told by Mrs. Nichols that she did not know where her husband was; that the Panasonic debt was not going to be paid; that she was not obligated for T&N's debts; that Mr. Nichols had spent all of their money; and that she was uncertain as to what she would do with the remaining funds in the joint account. On October 27, 1994, Mrs. Nichols withdrew the sum of $34,737 -- all but about $1,000 -- from the joint account. The following day, the Taylors declared the note in default and filed this action.

4

The Taylors and their attorney agreed to a fee of one-third of any amount recovered, but they subsequently reduced the percentage to one-sixth.

On November 1, 1994, after having been served with a copy of the Taylors' complaint, Mrs. Nichols attempted to pay off the balance on the note, but payment was refused by the Taylors and their attorney. On November 7, 1994, the trial court entered an order allowing the payment of $71,760 by the Nichols in full payment of the note.

The remaining issues, pertaining to default, attorney fees and the Panasonic obligation, were argued before the trial court on April 23, 1996. The trial court found that T&N and the Nichols had defaulted on the note by failing to pay the obligation to Panasonic and by removing the cash collateral from the bank. The court found that the Taylors were justified in declaring a default under the terms of the note. The court also found that they were justified in fearing that the Nichols were attempting to evade payment of the note and the Panasonic obligation. It based this conclusion on the following circumstances: Mrs. Nichols' statement that T&N was without funds; Mr. Nichols' fraudulent procurement of the first certificate of deposit; Mr. Nichols' disappearance on two occasions; and Mrs. Nichols' withdrawal of the collateral from the joint bank account without the Taylors' knowledge or consent. The court held that the default entitled the Taylors to recover their reasonable attorney's fees, which it fixed at $11,960.13, being one-sixth of the principal recovered on the note.

5

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record with a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; **Hackett v. Smith County**, 807 S.W.2d 695, 699 (Tenn.App. 1990); **Smith v. Jarnagin**, 436 S.W.2d 310, 313 (Tenn.App. 1968). Conclusions of law come to us free of any such presumption. **Adams v. Dean Roofing Co.**, 715 S.W.2d 341, 343 (Tenn.App. 1986).

## III. *Finding of Default*

The trial court found a number of defaults under the terms of the promissory note. We agree that there was a default. As indicated earlier, the note defines default as, among other things, any failure by T&N "to abide by the terms of the security agreement... or to provide the collateral as provided herein." When Mrs. Nichols withdrew all but $1,000 from the joint account, she removed the collateral that secured the debt; thus, from that moment forward, the defendants were in default due to their failure "to provide the collateral as provided [in the note]." Mrs. Nichols took this action without the consent or knowledge of the Taylors.

The Nichols contend that the trial court mistakenly assumed that the promissory note required them to maintain cash collateral at all times in an amount equal to the unpaid balance of the note. Pointing to the provision in the note that states

6

that the security agreement was to be released once the balance fell below $100,000, the Nichols argue that, since the balance at the time of the alleged default was approximately $71,000, they were relieved of their obligations under the security agreement.

While we agree that the security agreement was released once the unpaid balance fell below $100,000, we do not agree that this contingency relieved the Nichols of their *separate* obligation to provide cash collateral as specified in the note. The security agreement, which was released, is distinct from the collateral requirement. Thus, although T&N and the Nichols were no longer bound by the security agreement, they were still subject to the requirements of the promissory note; specifically, they were obligated to "provide the collateral" that was required by the note. As far as the note was concerned, the only significant effect of the diminution in the debt was that the Nichols were not required, as the balance declined, to "maintain cash collateral in excess of the unpaid balance." Thus, the note implicitly still required them to provide cash collateral in an amount equal to its outstanding balance, which, at the time of the withdrawal, was in excess of $71,000. This they failed to do.

The Nichols also argue that the withdrawal of funds from the joint account cannot constitute a default, since those funds were not subject to the provision in the note requiring the Nichols to "provide the collateral." They maintain that their agreement with the Taylors to deposit approximately $45,000 in the joint account was a separate transaction, wholly independent

7

of the promissory note, and that their withdrawal of those funds therefore could not constitute a default under the note. We do not agree. The funds in the joint account were clearly intended to be substituted as collateral in place of the original $50,000 certificate of deposit that was referred to in the note. It is well-settled that "the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted" by a court that is asked to construe that contract. *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983); *Ogle and Shelton v. Realty World-Barnes Real Estate Co. and Wood*, C/A No. 03A01-9610-CH-00336 (Tenn.App., E.S., filed April 28, 1997, Franks, J.). In this instance, the parties treated the funds in the joint account as a substitute for a portion of the original collateral required by the note. Therefore, according to the note's terms, Mrs. Nichols' withdrawal of those funds constituted a default in the form of a "[f]ailure to... provide the collateral as provided [in the note]."

Finally, the Nichols argue that no default occurred, since, according to their theory, Mrs. Nichols withdrew the collateral in order to pay the note in full. It is true that the note authorizes prepayment in full without penalty; however, Mrs. Nichols' attempted payment came only *after* she had been served with process in this lawsuit. Whether her intent was as stated by her at trial -- and the timing of her payment certainly brings this into question -- is not the real issue. What she did was a default, as defined by the Nichols when they signed the note. If she had wanted to avoid the consequences of a default, she could have easily secured the Taylors' consent. That consent could not

8

have been reasonably withheld under the circumstances of this case.

In view of the foregoing, we cannot say that the evidence preponderates against the trial court's finding that a default occurred. The parties were free to define default in any way they chose, and the withdrawal of funds from the joint bank account falls squarely within the note's sixth category of default: "failure... to provide the collateral as provided herein." Given our conclusion that the trial court correctly found that this act constituted a default, it is not necessary for us to consider the court's other basis for finding a default -- T&N's failure "to pay its debts as they become due."

IV. *Award of Attorney's Fees*

The burden of proof as to what constitutes a reasonable attorney's fee rests on the party seeking fees. ***Wilson Management v. Star Distributors***, 745 S.W.2d 870, 873 (Tenn. 1988). As stated by the Supreme Court,

> where an attorney's fee is based upon a
> contractual agreement expressly providing for
> a reasonable fee, the award must be based
> upon the guidelines by which a reasonable fee
> is determined. [citations omitted] The
> parties are entitled to have their contract
> enforced according to its express terms.
> Where they specify a reasonable fee rather
> than a percentage of recovery, it is clear
> that they expect a court to adjudicate the
> issue of a reasonable fee...

***Id.***

9

In the instant case, the promissory note clearly provides for the payment of the Taylors' "reasonable attorneys' fees" in the event they retained an attorney for the purpose of collecting the unpaid balance on the note or protecting their interest in the collateral.  Thus, by demonstrating that a default occurred, the Taylors carried their burden of proving their entitlement to attorney fees under the note.  It then became the duty of the trial court to adjudicate the issue of a *reasonable* attorney's fee, and the duty of the Taylors to present sufficient proof to enable the court to make that determination. *Id.*

The Taylors had the additional responsibility of presenting evidence relative to the various "guidelines by which a reasonable fee is determined." *Id.*  The factors relevant to the calculation of a reasonable attorney's fee are essentially those found in Disciplinary Rule 2-106(B):

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> (3) The fee customarily charged in the locality for similar legal services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances.
>
> (6) The nature and length of the professional relationship with the client.

10

(7) The experience, reputation, and ability
of the lawyer or lawyers performing the
services.

(8) Whether the fee is fixed or contingent.

*Alexander v. Inman*, 903 S.W.2d 686, 695 (Tenn.App. 1995). The
reasonableness of a fee depends on the facts of each case; thus,
the trial court must consider all of the surrounding
circumstances as they pertain to the eight criteria listed above.
*Id.*

The Taylors cite **Wilson Management** for the proposition
that the trial court may set attorney's fees even in the absence
of both expert testimony and a prima facie showing of what
constitutes a reasonable fee. **Wilson Management**, 745 S.W.2d at
873. Again relying on that case, they contend that the Nichols
failed to meet their obligation to insist upon a hearing on the
issue of reasonable fees. *Id.* We find this reliance to be
misplaced. The relied-upon language in **Wilson Management**
addresses those situations where a trial court awards attorney's
fees without conducting *any* hearing on the issue. In the instant
case, there was a hearing at which the question of attorney's
fees was addressed. In fact, the trial court's order of December
5, 1994, specifically reserved the issue for a subsequent
hearing, which hearing ultimately took place on April 23, 1996.
On that occasion, the court heard some, albeit minimal, testimony
regarding the issue of reasonable attorney's fees for the
Taylors.

11

In setting attorney's fees in this case, the trial court should have evaluated all of the surrounding circumstances against the background of the eight factors set forth in DR 2-106(B). From all appearances, it did not do so. On the contrary, the court apparently awarded the Taylors a flat percentage of their recovery simply because that was the stipulation in the agreement with their attorney. The Taylors' fee agreement with their attorney is only one factor in the analysis. That agreement in and of itself does not automatically render that fee reasonable.

We conclude that in the interest of justice, this case should be remanded to the trial court for a proper determination of the reasonable attorney's fees to which the plaintiffs are entitled. T.C.A. § 27-3-128 provides:

> The [appellate] court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right.

By this decision, we do not mean to imply that a remand will be appropriate in all cases where there has been insufficient proof regarding the reasonableness of attorney's fees. We merely hold that, under the facts of this case, a remand for a more thorough determination is warranted.

12

The judgment of the trial court is affirmed, except for that portion awarding attorney's fees of $11,960.13 to the plaintiffs, which is hereby vacated. This case is remanded to the trial court for such further proceedings as are appropriate, consistent with this opinion. Exercising our discretion, we tax

the costs on appeal half to the appellants and half to the appellees.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.