NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0859n.06

No. 13-5085

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 01, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KATHY WOOD; LAWTON WOOD; JESSICA BLASK; MARK BLASK, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| COCKE COUNTY, TENNESSEE; COCKE COUNTY LEGISLATIVE BODY; COCKE COUNTY HIGHWAY COMMISSION; KENNETH FORD, Cocke County Highway Administrator; RICKY BRYANT | ) ) ) ) ) ) | |
| Defendants-Appellees, | ) ) | |

Before: COOK, GRIFFIN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. The plaintiffs own land in Valley View Estates, a subdivision in Cocke County, Tennessee. They sued the county, claiming that the federal Constitution and Tennessee law require the county to maintain the private roads in their subdivision. The district court rejected their claims. We affirm.

I.

In the late 1990s, Ricky Bryant developed Valley View Estates. Plaintiffs Lawton and Kathy Wood purchased a log cabin there. Plaintiffs Mark and Jessica Blask likewise purchased land in the subdivision, but for their mobile home.

The Woods' purchase agreement for their log cabin required Bryant to maintain the subdivision's roads until the county accepted them into its road system—which is something the county has never elected to do. Meanwhile, Bryant was arrested on bank-robbery charges in 2010 and is now in prison.

Thus, for some years now, the plaintiffs have looked to the county to accept their roads. The county's Legislative Body decides whether to accept private roads into the county system. In doing so it considers the recommendations of the county's Highway Commission, which inspects roads and advises whether they meet certain specifications. The county's 1962 specifications allowed the county to accept gravel roads that met certain criteria. In 2004, the county revised its specifications to allow it to accept only paved roads; but for several years after 2004, the county continued to accept some roads that met only the 1962 specifications.

When the plaintiffs bought their properties, Valley View's roads—which then, as now, were gravel—met the 1962 specifications. Bryant asked the county to accept the roads in 2006, and in turn assured Kathy Wood that the county was in the process of accepting them. Over the next few years, Wood repeatedly asked the county's road superintendent when the county was going to accept the roads. According to Wood, the superintendent typically responded that the county was "working on it" and "not to worry."

Meanwhile, residents in Applewood Estates—another Ricky Bryant development—had likewise asked the county to accept their roads. Unlike Valley View's residents, however, Applewood's invested time and money improving their roads to bring them up to the 1962 specifications. In 2010, the county accepted Applewood's roads.

For some indeterminate period during the summer of 2010—the record is unclear on the point, though it suggests the period was brief—a handful of logging trucks used Valley View's roads to haul their loads. In doing so, the trucks rutted and otherwise degraded the roads. A resident of Valley View protested to the county sheriff that the truckers were trespassing, but a sheriff's deputy responded—incorrectly—that the roads were public and therefore open to the loggers. By the end of that summer, the roads had fallen below even the 1962 specifications.

During 2011, the plaintiffs pressed the county to accept their roads. The county refused. That year it also adopted new specifications that again required paved roads and that expressly ended the county's practice of accepting roads that met only the 1962 specifications. Valley View's residents could not afford to bring their roads up to the new specifications.

So instead they brought this lawsuit, claiming that the county's refusal to accept their roads violated their rights to equal protection and substantive due process, and that the county had implicitly accepted the roads under Tennessee law. The district court granted the county's motion for summary judgment on the substantive due process and implied-acceptance claims. The court then held a bench trial on the equal protection claim, after which it held that the county had a rational basis for refusing to accept Valley View's roads.

This appeal followed.

## II.

## A.

The plaintiffs claim that the county's refusal to accept Valley View's roads, while accepting Applewood's, violated the plaintiffs' right to equal protection. The district court rejected this claim

after a bench trial, which means that we review its legal conclusions de novo and its factual findings for clear error. *Spurlock v. Fox*, 716 F.3d 383, 393 (6th Cir. 2013).

To prevail on their equal protection claim, the plaintiffs must prove that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To meet that standard—given the absence of any proof that the county's action was animated by ill will—the plaintiffs must show there is not "*any* conceivable basis" that rationally supports the county's decision to accept Applewood's roads while refusing to accept theirs. *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005) (emphasis in original). But the county did have a rational basis to reject Valley View's roads: they failed to meet even the county's 1962 specifications, whereas Applewood's did. Valley View's roads therefore would have been more expensive for the county to maintain. The plaintiffs respond that the county lacks evidence that it rejected Valley View's roads on grounds of cost. But the county "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (internal quotation marks omitted). So the district court was correct to reject this claim.

B.

The plaintiffs also challenge the district court's grant of summary judgment to the county on their substantive due process and implied-acceptance claims. We review the court's decision de novo. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 620 (6th Cir. 2013).

In support of their substantive due process claim, the plaintiffs first argue that the county's refusal to accept Valley View's roads was "arbitrary and capricious." *See generally EJS Properties, L.L.C. v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012). That argument fails for the same reason that the plaintiffs' equal protection claim does. The plaintiffs otherwise argue that they have a "fundamental right" to county maintenance of their roads. But an alleged fundamental right must be "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations and quotation marks omitted). Suffice it to say that the right asserted here does not meet this standard.

The plaintiffs' remaining claim is that, even though the county did not formally accept Valley View's roads, it implicitly accepted them as a matter of Tennessee law. A county's acceptance of roads "may be implied from a general and long-continued use by the public as of right." *Doyle v. City of Chattanooga*, 161 S.W. 997, 998 (Tenn. 1913).

Here, the plaintiffs cite two circumstances that they say demonstrate long-continued public use of Valley View's roads. The first is that police and fire vehicles used the roads in response to calls from the subdivision's residents. But those vehicles traversed the roads at the request of Valley View's residents, rather than as a matter of right. Second, as noted above, on one occasion a sheriff's deputy refused to exclude the logging trucks from Valley View's roads, on the mistaken belief that the roads were public. On this point one can sympathize with the plaintiffs' frustration; but so far as the record shows here, nobody from the subdivision ever disputed the deputy's assertion or otherwise followed up with other county officials. And in any event the deputy's mistake, on a

single occasion, did not give rise to "a general and long-continued" public use of Valley View's roads. *Id.*

The plaintiffs respond that their case is similar to *Hackett v. Smith County*, 807 S.W.2d 695 (Tenn. Ct. App. 1990), where the court found enough public use to imply acceptance. But there the public repeatedly used the subdivision's roads to access a business and a fishing pond. *Id.* at 697. The plaintiffs lack proof of any similar usage here. Hence their implied-acceptance claim fails.

The district court's judgment is affirmed.