Robert F. SMITH, Commissioner of
Transportation, etc.,
Plaintiff-Appellant,

v.

Carl V. BLACK et al.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

Dec. 3, 1976.

Certiorari Denied by Supreme Court
March 14, 1977.

R. A. Ashley, Jr., Atty. Gen., Nashville, Michael Murphy, Murfreesboro, for plaintiff-appellant.

Marshall E. Duggin, Woodbury, for defendants-appellees.

## OPINION

TODD, Judge.

In this eminent domain proceeding, the plaintiff, Commissioner of Transportation, has appealed from a non-jury award of $12,000.00 for the taking of a quantity of defendants' land for highway purposes.

The original petition, filed on July 14, 1972, sought condemnation of a 1.997 acre tract. The original answer, filed on May 14, 1974, raised only the issue of damages. However, by amendment filed on June 18, 1975, the defendants alleged that the taking involved an additional tract of 2.803 acres. The Trial Judge awarded $12,000.00 compensation for both tracts. On appeal, the condemnor concedes the correctness of the judgment as to the 1.997 acre tract, but questions the judgment as to the 2.803 acre tract because it had been previously dedicated for public use.

It is conceded that said 2.803 acre tract was set apart as a road in a subdivision plot recorded by defendants' predecessors in title, however it is insisted by defendants that the dedication was never completed and was revoked by subsequent acts of the owners.

It is therefore necessary to narrate the material facts which are undisputed.

The former owners, Mr. and Mrs. O. C. Morgan owned a tract of about 51 acres on the southerly side of Bridge Avenue.

In May 1959, Mr. and Mrs. Morgan filed for record a map of a subdivision of a part of their property designated as Section I, West Meadows. Said subdivision did not include the 2.803 acre tract in issue.

In November 1962, Mr. and Mrs. Morgan filed for record a *resubdivision* of parts of their property, including the unsold part of Section I plus additional parts of their land not previously subdivided. Said *resubdivision*, designated Section II, West Meadows Subdivision, contained some lots fronting on Bridge Ave., and, in addition, a number of other platted streets, including a street called March Blvd., 120 feet in width and extending from Bridge Ave. southward along the eastern boundary of the subdivision. This said March Blvd. is the 2.803 acre tract which the plaintiff-condemnor insists was dedicated and did not need to be condemned for use as a highway.

In January 1963, Mr. and Mrs. Morgan sold lot 19 in Section II. Said lot fronted on Bridge Ave. and did not require March Blvd. for access to the public way.

Also in January 1963, Mrs. Morgan, as surviving tenant by the entirety, sold to Mr. and Mrs. Bruce Elrod all of the unsold residue of the Morgan land. The description in said deed recites:

"A portion of the property herein conveyed has been platted for a Subdivision, known as the West Meadows Subdivision, which plats are duly recorded in said Register's office and this conveyance is made *subject to the easements* and set back lines as shown upon said plats." (Emphasis supplied)

In August 1964, Mr. and Mrs. Elrod sold to James Thomas and wife Lot No. 2 of West Meadows Subdivision Section II, making reference to the recorded plat for a more particular description. On the recorded plat, said Lot 2 appears at the southwest corner of Bridge Avenue on which it fronts 120 feet and March Blvd. on which it fronts 125 feet.

After conveying another portion of the subdivision which fronted only on Bridge

Ave., in May 1968, Mr. and Mrs. Elrod conveyed the remainder of their property to the defendants, Mr. and Mrs. Black. The description in said deed refers to the deed of Mrs. Morgan to Mr. and Mrs. Elrod, quoted supra, stating:

"This being the same parcel of real estate designated as Tract One in the deed of Dora J. Morgan, a widow, to Bruce Elrod and wife, Mabel D. Elrod, . . . ."

On July 14, 1972, appellant sued to condemn a 1.997 acre tract which was in the *unsubdivided* portion of the defendant's land and which was a continuation of the right of way of March Blvd. beyond the subdivision. There is no controversy about this 1.997 acre tract.

In August 1972, an order was entered awarding possession of the 1.997 acre tract to condemnor.

In April 1973, condemnor began highway construction upon the 2.803 acre tract platted as March Blvd. on the recorded subdivision.

In May 1974, defendants filed an answer to the condemnor's petition for 1.997 acres, but did not mention any claim to the 2.803 acre tract.

In August 1974, all parties announced ready for trial in respect to the 1.997 acres.

In June 1975, by leave of court, defendants amended their answer to claim compensation for the 2.803 acres. The Trial Judge decided that said tract was not dedicated and that defendants should be compensated for same. Thereafter, the value of both tracts was determined to be $12,000.00 and appeal was taken from judgment for this amount.

The sole assignment of error complains of the holding of the Trial Court that defendants were entitled to compensation for the taking of the 2.803 acre tract.

In addition to the claim of dedication, appellant also claims the benefit of the one year statute of limitations on actions in inverse condemnation, § 23–1424 T.C.A. From the above chronology, it is clear that defendants' claim for compensation was not presented within twelve months after the initial entry upon their property by the plaintiff-condemnor. Allowing the defendants the benefit of their June 1975 amendment by relating it back to their original answer filed in May 1974, their claim came too late, i.e., more than twelve months after the entry and commencement of construction in April 1973.

The only manner in which defendants can avoid the running of the statute of limitations would be to relate their June 1975 amendment of their May 1974 answer to the date on which plaintiff filed its original action on July 14, 1972. This date occurred nearly a year *before* entry or commencement of operations, hence an inverse condemnation suit could not have been maintained at that time.

◼ The assertion of a right to compensation for an entirely separate tract than that described in the petition appears to be in the nature of a set-off or counter-claim in that it brings forward an entirely new right of action. In this light, the commencement of the original action did not toll the running of the statute of limitations on the inverse condemnation action on a different tract of land. *Lovejoy v. Ahearn*, 223 Tenn. 562, 448 S.W.2d 420 (1969); *Maxwell v. Roark*, 337 F.Supp. 506 (D.C.Tenn. 1971).

It is arguable that the filing of the original condemnation suit brought before the court all issues of compensation for the taking of any and all parcels belonging to defendants for the construction of the public improvement mentioned in the complaint. However, no authority has been found to support such a proposition.

The other contention of appellant is based upon the alleged previous dedication of the tract. As such, it goes to the merits of the controversy and will be considered as determinative of this appeal.

◼ In common parlance, the word "dedication" implies simply a setting apart

for some solemn purpose. Such a dedication might be accomplished by the donor alone. However dedication in law, especially common law dedication, requires more, that is the actual or implied acceptance by the donee. 26 C.J.S. Dedication § 2, p. 401. Tennessee appears to have no statute on dedication, hence the common law must control.

■ In this respect, a common law dedication partakes of some of the attributes of a deed (requiring intent to convey and delivery) or a contract (requiring an offer and an acceptance). 26 C.J.S. Dedication § 34a, p. 459.

■ Until the offer of dedication has been accepted by the donee or estoppel has arisen by intervening rights, the offer of dedication may be withdrawn or revoked. 26 C.J.S. Dedication § 58, pp. 542 et seq.

■ Where an owner of land plats it on a map, designating certain portions thereof for public use and thereafter records the map, he will be deemed to have thereby made an offer to dedicate the indicated portions to the public for the public purpose. 26 C.J.S. Dedication § 22, p. 438.

■ Where an owner makes a sale of land with reference to a map or plat, in the absence of a manifestation of a contrary intention, he thereby manifests an intention to dedicate the streets and alleys shown thereon to the public use. *Varallo v. Metropolitan Government of Nashville and Davidson County* (Tenn.App.1973), 508 S.W.2d 342.

■ Public use or acceptance of roads platted on a recorded plan will ordinarily complete the process of dedication. *Moore v. Queener*, 62 Tenn.App. 490, 464 S.W.2d 296 (1970).

In the light of the principles just stated, the facts already narrated establish the rights of the parties in the present case.

■ The filing in November 1962, of the map of Section II, West Meadows Subdivision, was an unequivocal *offer* to dedicate to public use all of the streets shown on said map, including the right of way of March Blvd. shown thereon.

The sale of Lot 19 (not fronting on March Blvd.) in January 1963, by deed referring to the map of Section II was a reiteration of the offer of all streets in the subdivision.

The sale of the entire subdivision in January 1963, and the acceptance by the purchaser of a deed reciting the recorded subdivision was a further reiteration of the offer.

The sale in August 1964, of Lot No. 2 referring to the recorded plat was a further reiteration of the offer. The purchaser bought a corner lot apparently fronting partly on March Blvd. The seller would probably be estopped to revoke, renounce or withdraw the offer of dedication to create some other use for purposes other than a street, in spite of the disclaimer mentioned hereafter.

The deed executed to and accepted by defendants in May 1968, refers to a previous deed which reserves easements shown on the recorded plats without any indication that same have been or were being revoked.

■ No action whatsoever was taken to renounce, revoke or withdraw the offer of dedication prior to the entry upon the land and beginning of construction in April 1973. Such entry and beginning of construction was an unequivocal acceptance of the offer of dedication which completed the process of perfecting an irrevocable dedication. *McCord v. Hays*, 202 Tenn. 46, 302 S.W.2d 331 (1957); *Moore v. Queener*, supra, 26 C.J.S. Dedication § 40b(1), pp. 477, 478.

Appellees first insist that there has been no legal dedication of the 2.803 acre tract, citing *State ex rel. Kincaid v. Hamilton*, 109 Tenn. 276, 70 S.W. 619 (1902); however, the cited case is authority only for the rule that a private owner of one lot in a subdivision is not entitled to an injunction to prevent the obstruction of each and every street platted in the subdivision regardless of whether accepted or improved by the public.

Appellees correctly state the rule requiring an unequivocal offer and unequivocal acceptance. Such rule has been satisfied by the unequivocal offer of a recorded plat and the unequivocal acceptance by commencement of construction.

Appellees cite *Nashville Trust Co. v. Evans*, 30 Tenn.App. 415, 206 S.W.2d 911 (1947); however that case involved an informal easement by prescription and not a recorded plat.

■ Appellees insist, correctly, that an offer of dedication may be withdrawn or revoked at any time before acceptance; however, as previously pointed out, the acceptance occurred before any withdrawal or revocation.

Appellees insist that neither they nor their predecessors ever made a dedication of streets in the recorded subdivision. Such is not in conformity with the events previously narrated. Mr. and Mrs. Morgan made a specific, recorded offer of dedication when they recorded the plat of the subdivision. Nothing remained for them to do to complete the dedication. Only acceptance by the public authority was required, and this was forthcoming. It is true that the intervening owners, Mr. and Mrs. Elrod, did not specifically make a further offer of dedication. Such was unnecessary. They accepted a deed which specifically reserved the easements set out in the subdivision plat. Whether it be said that Mr. and Mrs. Elrod ratified or renewed the offer of dedication by acceptance of the deed, or that they took title *subject* to the *express reservation* of the platted streets, or that the previous offer of their predecessors remained in effect by failure to withdraw, the mere transfer of title under the stipulation of the deed, did not terminate or revoke the offer of dedication represented by the recorded plat.

The same may be said of the deed from Mr. and Mrs. Elrod to defendants-appellees except that it did not contain an express reservation of easements, but described the property as being the same as that conveyed in the previous deed which did contain the express reservations.

■ Whatever the right of an offerer to revoke or withdraw his offer of dedication, the withdrawal or revocation must be by appropriate means.

■ While it has been held that conveyance of the subject property may effect a revocation, 26 C.J.S. Dedication § 60, p. 548, nevertheless, where the conveyance recognizes the existence of the dedication (offer), as by reference in the description of the property, the dedication is not thereby revoked. Ibid.

■ It has been held that the death of one of the dedicators before acceptance effects a revocation of the dedication. *Chicago, M. & St. P. Ry. Co. v. City of Chicago*, 264 Ill. 24, 105 N.E. 702, Ann.Cas. 1917A, 1146 (1914). However, the facts in that case were extreme, including a period of 59 years with intervening rights of occupants. The present case does not seem to be an appropriate one for application of a rule of revocation by death. Even if this Court should be disposed to apply the rule, the deed of Mrs. Morgan, surviving owner, by reference to the preceding deed effectively reiterated and renewed the previous offer of dedication.

Appellees argue that Mr. and Mrs. Morgan revoked the offer of dedication by failing to sell property fronting on March Blvd. Such may avoid the private claims of other owners of lots fronting on March Blvd. (of which none were created by sale), but does not revoke the offer to the public authority.

Next, appellees argue that the property was applied to inconsistent uses by the rezoning of the property. Such was not inconsistent with the existence of March Blvd., a 120 foot right of way along the eastern border of the tract.

■ The failure of the City of Murfreesboro to accept the street, the requirement that the owners mow the entire area and destroy a building thereon, and the exist-

ence of fences and cross-fences are not deemed inconsistent with the continuance of the offer of dedication.

Neither is payment of taxes on the entire tract deemed to work a revocation under the circumstances.

Appellees rely upon the fact that a deed from Mr. and Mrs. Elrod to James H. Thomas and wife contained a disclaimer of covenant or agreement that any of the streets shown on the plat would ever be opened up or that the lot being sold was a corner lot. The clear purpose of said deed provision was to disclaim liability in event March Blvd. should never be improved, but it was not a revocation of the offer made in the recorded plat.

Appellees rely upon evidence that, in its original appraisal of the property to be taken, the representatives of petitioner apparently included the 2.803 acre tract in their computations. Such an inadvertence or error of fact cannot affect the substantive rights of the parties which were correctly ascertained and stated in the original complaint.

Appellants cite authority for the correct determination of the quantity of land taken in the proceedings for condemnation. Such authority does not extend to separate tracts, especially where the separate tract is already held by the condemning authority by dedication.

Aside from the applicable rules of law, common justice denies the right of defendants to receive compensation for this previously dedicated property. It is obvious from an examination of the maps that March Blvd. was to be a major thoroughfare of the subdivision. Nineteen lots are planned to front wholly or partially on March Blvd. Two entrances to the subdivision are planned to open on March Blvd. The failure to sell any lots except those fronting on the existing road (Bridge Ave.) make it forceably evident that sales of interior lots awaited the construction of access roads of which March Blvd. was a major and vital part.

The construction of March Blvd. (the project involved in the present taking) will be of incalculable value to the subdivision by giving frontage on an improved street to a large number of lots and furnishing convenient access for the construction of two streets into the subdivision. It does not seem that defendants will be injured by the enforcement of the dedication of March Blvd. so that they may have the advantage of the benefits of the planned street. It would appear that defendants would be unjustly enriched to require payment to them of damages for the privilege of building a street in their subdivision which street will bring into fruition the profits anticipated when the subdivision was planned and recorded.

For the reasons stated, this Court has concluded that the 2.803 acre tract designated on the recorded plat as March Blvd. was the subject of a valid, subsisting offer of dedication which ripened into an irrevocable dedication when the condemnor started construction of the highway.

Accordingly, the award to defendants should have been only for the tract of 1.997 acres outside the platted subdivision. It appears that the Trial Judge fixed a unit value of $2,500.00 per acre which was not questioned by either party and which is sustained by the evidence.

The judgment of the Trial Judge will therefore be modified by reducing same to $4,992.50, the value of 1.997 acres at $2,500.00 per acre; and judgment will be entered in this Court in favor of defendants-appellees in said amount together with interest from date of judgment in the Trial Court and all costs, including costs of this appeal.

Modified and Rendered.

SHRIVER, P. J., and DROWOTA, J., concur.