
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2017 Session

## STATE EX REL. APPALOOSA BAY, LLC ET AL. v. JOHNSON COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Johnson County
Nos. 6948 & 7146    John C. Rambo, Chancellor**

_____

### No. E2016-01163-COA-R3-CV

_____

Two owners of separate lots in a planned residential subdivision of twenty lots brought this action against the Johnson County Regional Planning Commission and several state entities after the subdivision's developer went into bankruptcy and development of the subdivision was halted. When the developer had earlier posted a performance bond securing the completion of the subdivision's infrastructure, the planning commission had approved the subdivision plat, although infrastructure, including roads and utilities, had not been completed. After developer's bankruptcy, the State of Tennessee bought the land comprising all of the subdivision lots, except the two owned by the plaintiffs. All of the remaining land in the intended subdivision, except for several other lots purchased by individuals before the bankruptcy, is now part of the Doe Mountain Recreation Area — an entity subsequently created by the State. Plaintiffs brought this action for breach of contract between developer and the planning commission. Plaintiffs also asked the trial court to issue a writ of mandamus compelling the county to complete the proposed subdivision infrastructure. The trial court granted the defendants summary judgment. The plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON, II, J., joined.


Arthur M. Fowler and Arthur M. Fowler, III, Johnson City, Tennessee, for the appellants, Appaloosa Bay, LLC, David Castillo, and Deborah Castillo.

Jeffrey M. Ward, Greeneville, Tennessee, for the appellees, Johnson County, Tennessee, and Johnson County, Tennessee Regional Planning Commission.

Mona Butler Alderson, Mountain City, Tennessee, for the appellee, Doe Mountain Recreation Authority.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Jay C. Ballard, Deputy Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Finance and Administration.

**OPINION**

**I.**

In 2006, Doe Mountain Development Group, Inc. (developer) owned about 8,500 acres on Doe Mountain in Johnson County. Developer intended to build a private residential subdivision known as Charter Ridge Club. Following the creation of a subdivision plan and plat with twenty numbered lots, developer presented the plat for final approval to the planning commission on August 14, 2006. According to plaintiffs, at the time of the submission of the plat, the subdivision "consisted of stakes along a rough-cut dirt road identifying the 20 lots." There were no utilities. The approximately three-mile road to the entrance of the proposed subdivision was a gravel and dirt road, appropriately identified as "gravel road" on the plat. The lots varied in size, the smallest being 1.32 acres, and the largest 2.96 acres. The total acreage of the twenty lots was 35.95 acres.

The minutes of the planning commission meeting on August 14, 2006 state the following:

> An estimate to construct the roads for this subdivision, and the 16,000 foot access road to it, was done . . . for $451,000. [Developer] proposed depositing $451,000 in the BB&T Bank in Johnson City to cover the cost of developing the roads. Final approval was granted subject to the cash deposit being executed, TDEC stamping the plat, and the other required signatures with staff's recommendation.

The plat was recorded on September 13, 2006. The $451,000 performance bond was deposited in escrow to secure the completion of the subdivision's roads and utilities. On January 17, 2007, plaintiff Appaloosa Bay, LLC purchased a 2.11 acre lot in the planned subdivision. On February 15, 2008, plaintiffs David Castillo and Deborah Castillo

purchased a 1.71 acre lot.[1] On June 9, 2008, the planning commission voted to release $150,000 of the money held in escrow, apparently for work on the roads. After this expenditure, a second, revised escrow agreement in the amount of $301,000 was executed on June 12, 2008.

Developer defaulted on its loan obligations and the mortgagee foreclosed on the property. The foreclosure did not affect plaintiffs' lots. The subdivision's infrastructure was not completed. Developer filed for bankruptcy on August 24, 2011. On March 26, 2012, the bankruptcy court entered an order approving the bankruptcy plan for liquidation of developer's assets. As part of the plan, the property owned by developer was sold to the Nature Conservancy, free and clear of encumbrances or claims. Nature Conservancy then sold 8,000 acres on Doe Mountain to the State of Tennessee. The State then transferred the property to the Doe Mountain Recreation Authority by way of a quitclaim deed as part of the creation of that latter entity, which opened to the public in November 2013. *See* Tenn. Code Ann. § 11-25-101 *et seq.* (2012) (The Doe Mountain Recreation Authority Act of 2012).

On December 10, 2012, the planning commission voted to declare developer and the subdivision development to be in default. The commission further approved a motion to "release the bond held in escrow to the State of Tennessee for the sole purpose of infrastructure on Doe Mountain." The amount held in escrow was $301,722.88, which the planning commission directed to be released to the State. The State applied $300,000 of the funds toward the purchase of the property from the Nature Conservancy, and returned the remainder to Johnson County.

Plaintiffs brought this action,[2] the essence of which is a request for the trial court to issue a writ of mandamus requiring Johnson County

> to provide electricity to the [s]ubdivision, to provide water to the [s]ubdivision, and to complete the road within the [s]ubdivision in accordance with Defendant Johnson County's Subdivision Regulations; and that [the] County accept the road from Harbin Hill Road located in Johnson County, Tennessee, to the [s]ubdivision as a public road.

Plaintiffs also asserted a claim for breach of contract, alleging that Johnson County breached its duty "under the two Cash on Deposit Escrow Accounts . . . by failing to

---

[1] Apparently four other lots were also sold to other individuals, but their owners are not participants in this lawsuit.

[2] Appaloosa Bay, LLC, and the Castillos originally each brought a separate action, but the two were later consolidated in the trial court.

apply money held in escrow to complete the construction of the [s]ubdivision and all improvements thereto." Named as defendants were Johnson County, the Doe Mountain Recreation Authority, and the Tennessee Department of Finance and Administration. The trial court later allowed plaintiffs to add the Johnson County Regional Planning Commission as a defendant. Following discovery, the trial court granted defendants summary judgment, holding that Johnson County had no obligation or duty that might be enforced by a writ of mandamus. The trial court further held that plaintiffs were neither parties nor third-party beneficiaries to developer's performance bond agreement between it and the planning commission. Plaintiffs timely filed a notice of appeal.

## II.

Plaintiffs raise the following issues:

> 1. Whether the trial court erred in holding that they do not have standing to sue as third-party beneficiaries under the subdivision performance bond agreement between the developer and the planning commission.
>
> 2. Whether the trial court erred in denying plaintiffs' request to issue a writ of mandamus requiring Johnson County to complete the construction and installation of the subdivision's infrastructure.
>
> 3. Whether the trial court erred in denying plaintiff's request for a declaratory judgment that the gravel road from Harbin Hill road to the plaintiffs' lots is a county road that must be maintained by Johnson County.

## III.

We review a grant of summary judgment in accordance with the following standard, as established by the Supreme Court:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion

for summary judgment de novo, without a presumption of correctness.

*    *    *

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (italics in original).  In the instant case, there are no disputed material facts.  Only legal issues are before us on this de novo review.

**IV.**

**A.**

The Johnson County Regional Planning Commission adopted subdivision regulations under the authority of Tenn. Code Ann. § 13-3-401 *et seq.* (2011).  Tenn. Code Ann. § 13-3-402(a)(1) provides generally that no proposed subdivision plat within a region governed by a regional planning commission "shall be filed for record or recorded until it has been approved by such . . . commission, and such approval endorsed in writing on the plat by the secretary of the commission or by another designee of the regional planning commission."  At the time the complaint was filed, Tenn. Code Ann. § 13-3-403 provided, in pertinent part, as follows:

(a) In exercising the powers granted to it by § 13-3-402, the regional planning commission shall adopt regulations governing the subdivision of land within its jurisdiction . . .

(b) Such regulations may include requirements as to the extent to which and the manner in which roads shall be graded and improved, and water, sewer, and other utility mains, piping, connections or other facilities shall be installed

as a condition precedent to the approval of the plat. . . . Such regulations may provide that, in lieu of the completion of such work and installations previous to the final approval of a subdivision plat, the commission may accept a bond . . . providing for and securing to the public the actual construction and installations of such improvements and utilities. . . . The attorney for the county in which the subdivision is located is hereby granted the power and duty to enforce any such bond by all appropriate legal and equitable remedies, and moneys collected on such bond shall be paid into the state treasury and, upon the order of the regional planning commission, shall be applied to the construction and installation of the improvements and utilities. The regulations may provide, in lieu of the completion of the work previous to the final approval of a plat, for an assessment or other method whereby the county . . . is put in an assured position to do the work and make the installations at the cost of the owners of the property within the subdivision.[3]

(Footnote added.) The planning commission's regulations provide in pertinent part as follows:

Every subdivision developer shall be required to grade and improve streets and alleys, and to install monuments, sewers, storm water inlets and water mains in accordance with specifications established by the Johnson County Regional Planning Commission.

\*        \*        \*

No subdivision plat shall be approved by the Johnson County Planning Commission until all required improvements have been constructed in a satisfactory manner and approved by the Planning Commission with such approval endorsed in writing on the plat by the secretary of the Planning Commission. . . . In lieu of requiring the construction and completion of all improvements prior to final plat approval, the Planning Commission may, at its sole discretion, enter

---

[3] Tenn. Code Ann. § 13-3-403 was extensively amended effective April 20, 2015. The new amendments are not applicable to this case, being effective after the complaint in this case was filed.

into a contract . . . with the subdivider to complete all required improvements.

As already stated, the infrastructure for the proposed subdivision was far from completed when the developer submitted the plat for the planning commission's final approval. The commission entered into a contract with developer whereby it deposited $451,000 into an escrow account with BB&T bank to secure developer's performance in completing the required infrastructure. After $150,000 was released by the commission, developer and commission executed another agreement, captioned "Cash on Deposit in Escrow Account with Johnson County," that similarly provides as follows in pertinent part:

> [The developer] does hereby firmly bind itself . . . unto the Johnson County Regional Planning Commission and the State of Tennessee for and on behalf of Johnson County, Tennessee in the sum of $301,000.00 to secure the performance by the [developer] of its undertaking herein and the completion of said CHARTER RIDGE CLUB Subdivision and the construction of all streets, sidewalks, roads, curbs, utilities, and all other improvements . . .
>
> In order to secure this obligation, [developer] has currently on deposit with Johnson County Trustee, in a separate and identifiable fund, the above amount which [developer] hereby pledges, in lieu of performance bond or other security, to secure its obligations hereunder. Johnson County Trustee agrees to maintain said deposit as a separate account naming the Johnson County Regional Planning Commission and the State of Tennessee for and on behalf of Johnson County, Tennessee *as sole beneficiaries* and agrees that . . . said funds shall be subject to removal solely and exclusively upon demand by the [commission]. . . . [Developer] unconditionally agrees that in any event of [its] failure or refusal to complete the construction of said subdivision and all improvements thereto, . . . the [commission] by and through its duly elected Chairman *may* without pursuing [developer] withdraw upon demand said funds from said deposit for use in completing said construction and improvements *at no cost to itself, Johnson County or the State of Tennessee*.

(Capitalization in original; italics added.)

Plaintiffs argue that they are third-party beneficiaries of the above contract, and so have standing to sue for specific performance. Regarding such a claim, the Supreme Court has stated:

> Under the modern rule, third parties may enforce a contract if they are intended beneficiaries of the contract. *See **Willard v. Claborn***, 220 Tenn. 501, 419 S.W.2d 168, 169 (1967); ***Moore Constr. Co. v. Clarksville Dept. of Elec.***, 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985). If, on the other hand, the benefit flowing to the third party is not intended, but is merely incidental, the third party acquires no right to enforce the contract. ***Willard***, 419 S.W.2d at 170. In order to maintain an action as an intended beneficiary, a third party must show: "(1) a valid contract made upon sufficient consideration between the principal parties and (2) the clear intent to have the contract operate for the benefit of a third party." ***First Tennessee Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.***, 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996) (citing ***United American Bank of Memphis v. Gardner***, 706 S.W.2d 639, 641 (Tenn. Ct. App. 1985)). The evidence of intent to confer a benefit must be clear and direct[.]

***Owner-Operator Indep. Drivers Assoc., Inc. v. Concord EFS, Inc.***, 59 S.W.3d 63, 68-69 (Tenn. 2001). The ***Owner-Operator*** Court set forth the following test:

> A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if
>
> (1) *The parties to the contract have not otherwise agreed*;
>
> (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
>
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
>
> (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or

(b) the promisee intends to give the beneficiary the benefit of the promised performance.

In so holding, we reiterate that our primary focus is upon the intent of the contracting parties. Thus, part (1) of the test provides that *courts should honor any expression of intent by the parties to reserve to themselves the benefits of the contract*. Likewise, part (2) ensures that third-party beneficiaries will be allowed to enforce the contract only when enforcement would further the parties' objectives in making the agreement.

*Id.* at 70 (emphasis added).

In this case, the performance bond executed by the parties specifically names "the Johnson County Regional Planning Commission and the State of Tennessee for and on behalf of Johnson County, Tennessee *as sole beneficiaries*." As the trial court correctly held,

Here, the bonds only mention the developer and Johnson County as parties. There is nothing in the terms of the bond, whether explicit or implied, showing an intent to enter into the bond for the purpose of protecting lot owners such as Plaintiff. There is no extrinsic evidence presented to show such an intention. Plaintiff is not a third-party beneficiary of the subdivision bond between the developer and Johnson County.

Plaintiffs cite the cases of ***Roten v. City of Spring Hill***, No. M2008-02087-COA-R3-CV, 2009 WL 2632778 (Tenn. Ct. App., filed Aug. 26, 2009), and ***Foley v. Hamilton***, 603 S.W.2d 151 (Tenn. Ct. App. 1980), to support their "standing" argument. Neither of these cases, however, involved a performance bond executed by a developer and planning commission that expressly designated the county and state as sole beneficiaries. In ***Roten***, we held that landowners had standing to challenge the actions of a planning commission as "aggrieved persons" under Tenn. Code Ann. § 27-9-101, which "authorizes persons who are 'aggrieved' to appeal 'any final order or judgment of any board or commission functioning under the laws of this state' to the courts." 2009 WL 2632778, at *3. ***Foley*** involved a dispute over whether the developer or the county was responsible for road maintenance when the developer had executed a "commitment for road maintenance," not a performance bond, wherein it agreed to maintain the roads

in a subdivision for a minimum of 18 months.  603 S.W.2d at 153.  We observed that "[p]laintiff lot owners are third party beneficiaries to the contractual obligation assumed by the developers and their rights under the written agreement are justiciable issues under the declaratory judgment law."  *Id.* at 154.  On a second appeal following our remand, the Supreme Court decided **Foley**, determining that "[t]he duty of a county to repair roads does not arise until roads are accepted" by the county, and that "[t]he developers had an implied contractual obligation to plaintiffs and all other owners of lots in the subdivision to do whatever was necessary to obtain an acceptance of the roads by Sevier County at the end of the eighteen month maintenance period."  **Foley v. Hamilton**, 659 S.W.2d 356, 360 (Tenn. 1983).  We have no disagreement with **Roten** or **Foley**, but they are distinguishable from the present case — in that, the express language of the contract plaintiffs attempt to rely on demonstrates an intention to exclude third-party beneficiaries.

**B.**

Plaintiffs argue that the trial court should have granted their request to issue a writ of mandamus compelling Johnson County to complete the construction and installation of the infrastructure of the defunct "subdivision."  As this Court observed in **Cooley v. May**, No. M2001-001162-COA-R3-CV, 2001 WL 1660830, at *5-6 (Tenn. Ct. App., filed Dec. 28, 2001),

> A writ of mandamus is an extraordinary remedy.  Its purpose is to enforce a clearly established legal right, or to compel a public official to perform his or her legal duties.  A writ of mandamus should be granted only when the party seeking it has no other specific remedy to enforce its right.
>
> Mandamus cannot be used to control a public official's judgment or discretion.  Thus, the writ cannot be used to compel a public official to perform a discretionary act or to perform a discretionary act in a particular way.  Likewise, if the act is not discretionary, a writ of mandamus cannot be used to affect a public official's judgment regarding the details of his or her performance of the act.  Therefore, a writ of mandamus is proper when nothing is left to the public official's judgment.

(Footnotes and internal citations omitted); *accord* **Paduch v. City of Johnson City**, 896 S.W.2d 767, 769-70 (Tenn. 1995) ("Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established").  We agree with the trial court's holding that there is nothing in the governing statutory scheme, Tenn.

Code Ann. § 13-3-401 *et seq.*, or the planning commission's regulations that places a clear duty on the county to complete infrastructure construction when a developer fails in its duty to do so.

In *Roten*, we observed that "[l]ocal land use planning decisions, including how best to exercise land use control powers, are basically legislative in character and are best left to local legislative bodies." 2009 WL 2632778, at *5 (internal quotation marks omitted). In *State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500, 501 (Tenn. Ct. App. 1991), the plaintiffs "sought to have the trial court mandate the issuance of a certified plat or, in the alternative, to find that the [planning commission] acted arbitrarily, capriciously and unreasonably in withholding approval of a plat for a subdivision." This Court, concluding that a writ of mandamus was not a proper or warranted remedy, noted the generally wide discretion afforded to a planning commission:

> Mandamus is a discretionary remedy that will issue only where the duty to be performed is ministerial and the obligation to act is peremptory, and plainly defined. . . . Mandamus will not lie to control official judgment or discretion. Where officials have the duty or opportunity to act only after making determinations, evaluations or judgments, they cannot be compelled by mandamus to do the act or do it in a particular way.
>
> *      *      *
>
> It is clear that a considerable amount of discretion is required to balance the respective rights and interests of present and future owners of property proposed for subdivision, present and future neighbors to such property, as well as the health, safety and general welfare of the City of Brentwood.

833 S.W.2d at 505 (internal citations omitted).

In this case, after developer went bankrupt before satisfying its obligation to complete the infrastructure of the planned subdivision, all of the lots on the subdivision plat, save the few non-contiguous lots that already had been sold to plaintiffs and a couple of other individuals, were sold to the Nature Conservancy. Then the acreage was transferred to the State, and made a part of the 8,000-acre public Doe Mountain Recreation Area. This was done in part by order of the federal bankruptcy court, which order did not impact plaintiffs' lots directly, but transferred the property under its

- 11 -

jurisdiction free and clear of any claims or encumbrances. The simple, significant fact is that, with the exception of the handful of lots sold before the bankruptcy, the remaining lots in the subdivision were ordered transferred free and clear of any claims or encumbrances. Thus, after this, there was no subdivision to be developed.

We are not unmindful of Tenn. Code Ann. § 13-3-403(b)'s provision that,

> [t]he attorney for the county in which the subdivision is located is hereby granted the power and duty to enforce any such [performance] bond by all appropriate legal and equitable remedies, and moneys collected on such bond shall be paid into the state treasury and, *upon the order of the regional planning commission*, shall be applied to the construction and installation of the improvements and utilities.

(Emphasis added.) This provision requires "the order of the regional planning commission" to the county attorney to exercise his or her power and duty under the statute. As already discussed, a regional planning commission retains a significant amount of discretion in deciding whether to issue such an order. This is particularly true and important when, as here, circumstances regarding the creation of the subdivision have significantly changed since the plan was approved.

We have stated on several occasions that "[w]hen a subdivision plan has been approved upon conditions, the failure to comply with the conditions will result in rescission of the approval." *Foley*, 603 S.W.2d at 153; *State ex rel. Byram*, 833 S.W.2d at 505; *Metro. Gov't of Nashville and Davidson Cnty. v. Barry Constr. Co.*, 240 S.W.3d 840, 852 (Tenn. Ct. App. 2007) ("if a developer fails to comply with the conditions of approval, the approval of the subdivision plat can be rescinded"). Once the subdivision plan failed and the approval was rescinded, the regional planning commission retained its discretion to consider and decide what to do next. It is not the proper role of a court to mandate how the commission should exercise this discretion under these circumstances.

Arguably, plaintiffs had potential claims against developer, but it is not clear from the record if they pursued such claims. In any event, plaintiffs have pointed to no authority establishing a clear and unequivocal right to compel the County or State to pay, at taxpayer expense, for roads and utility lines running to their lots under these unusual and unfortunate circumstances.

Plaintiffs' lots are accessible via a three-mile dirt and gravel road, labeled "gravel road" on the subdivision plat. That road connects to Harbin Hill road, a county road. The three-mile road is now the main trail for the Doe Mountain Recreation Area, designated "Trail 1," as stated by the sworn declaration of Michael Haven Farmer, Chair of the Board of Directors of the Doe Mountain Recreation Authority, who stated, in pertinent part, as follows:

> Doe Mountain opened to the public in November 2013, with approximately 30 miles of trails open for off-road vehicle use, mountain biking, and hiking.
>
> Trail 1 is the primary through trail on the property, starting from the DMRA Visitor Center entrance on Harbin Hill Road. This gravel and dirt trail passes near plaintiffs['] lot approximately three miles from the entrance and generally runs along the ridgeline for several miles before descending to Highway 167 for a total of approximately 9 miles.
>
> Plaintiffs['] lot is accessible by two or four-wheel drive vehicles, depending on the weather and current road conditions. To my knowledge, plaintiff has never approached the DMRA Board or a representative of the Board concerning access to its lot.
>
> *          *          *
>
> The DMRA Board has no plans to pave Trail 1 or to dedicate a portion of Doe Mountain property for a public road or public utilities. Such construction would adversely impact the Doe Mountain Recreation Area and would be inconsistent with the Management Plan development scenarios adopted by the DMRA Board.

(Numbering in original omitted.)

Plaintiffs asked the trial court to declare that the "gravel road," now Trail 1, is a county road, requiring the county to pave and maintain it. Johnson County responds by arguing that "the road/trail that [plaintiffs] now seek to have declared as a public road was always planned to be a private road, and there has been no action to unequivocally

dedicate and accept any "road" leading to the [plaintiffs'] lots as a public road." Tenn. Code Ann. § 13-3-405 provides that "[t]he approval of a plat by the regional planning commission shall not be deemed to constitute or effect an acceptance by any county or by the public of the dedication of any road or other ground shown upon the plat." Tenn. Code Ann. § 13-3-406 further provides as follows:

> From and after the time when the platting jurisdiction of any regional planning commission of any region has attached by virtue of the making and adoption of a major road plan as provided in § 13-3-402, no county or court or board or officer thereof or any other public officer or authority shall accept, lay out, open, improve, grade, pave or light any road or lay or authorize water mains or sewers or connections or other facilities or utilities to be laid in any road located within such region and outside of the boundaries of municipal corporations, unless such road has been accepted or opened or has otherwise received the legal status of a public road prior to the attachment of the planning commission's jurisdiction, or unless such road corresponds in its location and lines with a road shown on a subdivision plat approved by the planning commission or on a road plat made and adopted by the planning commission; provided, that the county legislative body of such county may accept or lay out any other road or adopt any other road location; provided further, that the resolution or other measure for such acceptance, laying out or adoption is first submitted to the planning commission for its approval and, if disapproved by the commission, receives the favorable vote of not less than a majority of the entire membership of the county legislative body; and a road approved by the planning commission upon such submission, or accepted, laid out, or adopted by the commission, shall have the status of an approved road location as fully as though it had been originally shown on a subdivision plat approved by the planning commission or on a plat made and adopted by the planning commission.

In *Foley*, the Supreme Court stated that "[t]he duty of a county to repair roads does not arise until roads are accepted," and "[a] developer's responsibility to maintain roads is a continuing responsibility until such time as the county accepts their dedication." 659 S.W.2d at 360. Regarding the dedication of a public road, in *Hackett v. Smith Cnty.*, 807 S.W.2d 695, 699 (Tenn. Ct. App. 1990), this Court stated:

- 14 -

> A completed dedication requires an offer of dedication and a public acceptance of that dedication. ***Smith v. Black***, 547 S.W.2d 947, 950–51 (Tenn. App. 1976). Both the offer of dedication and the public acceptance may be express or implied. . . . [A]n acceptance may be implied from a general and long continued use by the public as of right.

As we have further noted,

> Among the factors which indicate an intent to dedicate are: the landowner opens a road to public travel; acquiescence in the use of the road as a public road; and the fact the public has used the road for an extended period of time[.] While dedication is not dependent on duration of the use, extended use is a circumstance tending to show an intent to dedicate. Finally, an intent to dedicate is inferrable when the roadway is repaired and maintained by the public.

***Rogers v. Sain***, 679 S.W.2d 450, 453 (Tenn. Ct. App. 1984) (internal citations omitted); *accord* ***Cole v. Dych***, 535 S.W.2d 315, 319 (Tenn. 1976).

In this case, plaintiffs do not argue that there was an implied dedication from general and long continued use by the public, nor is there any evidence to support such a theory. Neither is there anything in the record showing that the planning commission or other county legislative body expressly dedicated the gravel road as a county road. We affirm the trial court's decision declining to declare the gravel road a county road.

## V.

The decision of the trial court is affirmed. Costs on appeal are assessed one-half to the appellant, Appaloosa Bay, LLC, and one-half to appellants David Castillo and Deborah Castillo. The case is remanded for collection of costs below.

_____
CHARLES D. SUSANO, JR., JUDGE